Welcome to the fourth day and final day of our panel sitting here in Atlanta. It's been wonderful to visit and spend some time with colleagues, including Judge Pryor and Judge Hull. You know the traffic light system, when the yellow light goes on, that means that your time is starting to draw to a close, so begin to wrap up. If we take you beyond the red light, don't worry about it, just keep talking. You'll be on our time and not yours. With that, we're ready to begin. Our first case is No. 24-11733, Walmart, Inc. v. Chief Administrative Law Judge, Mr. Saul. Thank you, Your Honor, and may it please the Court, Joshua Saulsman on behalf of the United States. The District Court here permanently enjoined enforcement of a substantively valid immigration statute against Walmart unless and until Congress repeals the statutes that provide removal protections to administrative law judges. More startlingly still, nothing in the District Court's reasoning is specific to this proceeding or this plaintiff. Under the District Court's logic, any regulated party in any proceeding before any agency under any statutory scheme would be entitled to analogous relief. It is inconceivable that had Congress been aware of a constitutional defect in the ALJ removal protection statutes that it would have wanted such administrative paralysis, and as a result, the District Court's injunction must be vacated. Can I ask you a procedural question? Please, Your Honor. I thought that your supplemental letter brief about the Solicitor General's position was, in my view, a little bit ambiguous. I know you're not going to press the defense of the double protection, but I don't know whether that means that you are withdrawing that argument or abandoning it, and I say that because we can't assume unconstitutionality and we can't take a party's concession about unconstitutionality at face value, I think, without addressing it ourselves, and if the government's position is that it is abandoning the defense of that four-cause protection system for ALJs, I think we at least have to consider appointing amicus to defend the constitutionality of the statutory scheme. I take your point, Your Honor. We are not defending the constitutionality of the scheme. I don't think appointment of amicus is necessary here, and I'd like to explain why. Several courts have, including this one in the Rodriguez case— Are you withdrawing the defense? —of the ALJ removal protections as they currently exist, as they currently provide two levels. So we're not going to assume unconstitutionality? Yes. Yes, we are. And that's — I would say that's consistent. In many contexts, it is. I actually don't think it is here. The Fourth Circuit in the K&R Contractors case did just that. In the Third Circuit in the Starbucks case did that. And indeed, this court in the Rodriguez case versus Social Security Administration from just a few months ago was confronted with a challenge to the ALJ removal protections. The court didn't address whether or not those removal protections were actually unconstitutional or not. It simply denied relief because the plaintiff there had not alleged compensable harm. And similarly here, Walmart has not alleged any harm that's traceable to those removal protections. Let me play devil's advocate on the procedural point for a second.  Your point is that a number of these cases which say that the movant here, Walmart, has to show some harm from the statutory problem, the constitutional problem. A number of those cases deal with retrospective relief. And so you think that the principle extends to prospective relief as well, right? Absolutely, Your Honor. Again, just playing devil's advocate. We haven't spoken about this case, so I certainly can't speak for my colleagues, and I'm not even speaking for myself. But if the court were to reject your argument on that point, the court to give you any relief has to reach the constitutionality of the statutory for-cause protection scheme, right? I think that's right. And I would submit that if this court, in conflict with several other circuits, were to conclude that the Collins remedial principles only apply to retrospective relief and don't apply when, as here, the plaintiff runs to court before the agency has a chance to complete its proceeding, we would submit the right outcome here is to affirm the judgment below. Absolutely. We cannot accept at face value your concession that the scheme is unconstitutional. We have to decide that for ourselves. Obviously, the Solicitor General's concession is a factor that we consider, but we just can't take it at face value and say, oh, the government agrees it's unconstitutional, we're done. And so I think, and again, I'm talking only about myself, I think if we reach that point, we have to seriously consider the way the Supreme Court has done when the government refuses to defend the constitutionality of a statute in a case before it to appoint amicus. I understand that logic. I think there are two reasons I hope it won't be necessary here. One, you can skip and should skip directly to the remedial inquiry. And indeed, as the Fourth Circuit said in the Canor Contractors case, that would be consistent with normal principles of constitutional avoidance. Take up the Collins question first. And we do think the Collins question here is going to be dispositive in our favor. But even if you end up rejecting our argument there, the reason I think you don't need to appoint amicus is because the question before the court isn't a declaration of the constitutionality on the constitutionality of this statute. There is a specific injunction before you, and I think you could probably affirm that specific injunction without necessarily hearing adversarial briefing. The district court ruled on the merits, right? The district court did rule on the merits, Your Honor. And the parties agreed to the merits. Yes. It's just you're not arguing the merits. Yes, we've... That's what we're talking about. Well, what we have here... We're not arguing our merit. You do, Your Honor. Whatever. New world. We're now saying, oh, no, it's unconstitutional. That's what we've got here. So we could still reach it. I would urge you not to. We are withdrawing the argument. Pretend this wasn't a constitutional argument. They're completely giving up any defense of the statutory protection scheme for ALJs. Yes, I understand. So you're... But we do have... We can't just say, because you say it's unconstitutional. It's constitutional. I'm talking about whether we need to appoint MIGAs or not. I'm just trying to think out loud about it. Yeah. We have it on the merits in the district court. We have it on the merits here. You are just not on the merits saying it's... So I think parties normally have... There's a different thing with withdrawing your defense. You're conceding it's unconstitutional. We are conceding the unconstitutionality. And if this weren't a constitutional case, you could certainly imagine a case where a party chose not, for example, there was a merits issue and a remedial issue, and an appellant might choose to appeal only on remedy and not to appeal on the merits. And I think that would be... I don't think that analogy is perfect here, but I think it helps explain the kind of posture we are in here. But all of this hopefully can and should be academic because of the controlling nature of the compensable harm inquiry that comes from the Supreme Court's decision in the Collins versus Yellen case that has been applied to ALJ removal protections by half a dozen circuits, including this one. Many of those cases involved retrospective relief, but several of them did not, including the Tenth Circuit's decision in the Leach Co. case. The Sixth Circuit, we notified the court-ish emotions panel in the Yapp automotive case, denied a preliminary injunction on the basis of this compensable harm analysis. And I want to be clear. If the court finds the compensable harm analysis applies, Walmart has no argument. Walmart has never attempted to show compensable harm here. And I think there's a good reason for that, which is, if anything, they say they would be worse off if the proceeding goes forward in front of an administrative law judge who didn't have removal protections. They don't mind the ALJ removal protections. They're trying to leverage something that they really find unobjectionable into taking down the entire scheme and into preventing enforcement altogether. And that's not something under the Supreme Court's remedial principles and those recognized by the courts that have specifically addressed challenges to ALJ removal protections. That's not allowed. And, yeah. Could you please give him four more minutes? We took him way off track at the beginning with other matters. Thank you, Your Honor. So, if I can, I think that they have basically two arguments about why they shouldn't have to satisfy that compensable harm standard. One is that there's something special about ALJ removal protections such that it should be, that they say it's not severable, and as a result, Collins doesn't apply there. Now, I think that shit may have sailed, given that this Court applied Collins to the ALJ removal protections in the Rodriguez case, so that there is already a decision from this circuit applying Collins in this exact context. But if their response to our 28J letter says, well, that was a drive-by ruling, the severability question wasn't squarely teed up there. So, if this Court thinks it's an open question, that's fine with us because we don't think it's a particularly hard question. The Supreme Court has repeatedly, over the last 15 years, been confronted with statutes that have a removal defect, an appointments clause defect, some kind of separation of powers problem. And time after time, it has directed that the right remedy is to sever the unconstitutional removal protection and to let the statute go forward. I think it's interesting that on the merits of their constitutional challenge, which was obviously debated earlier, the two cases they trumpeted the most, the two cases they urged this Court to follow were the Saylor Law case and the Free Enterprise Fund case. And what's notable about both of those cases is that they denied the exact relief that Walmart is seeking here. In those cases, the challengers wanted to bring the agency actions to a standstill. They wanted to say there's a constitutional defect in the statute. Accordingly, we can't be regulated anymore. We can't be subject to civil investigative demands. Things like that. And the Supreme Court said, no. It said, we agree with the challengers. These statutes are unconstitutional, but we preserve Congress's handiwork and we sever the unconstitutional piece and let the otherwise remainingly valid portion of the statute continue. And exactly... So I don't think this Court has to do the severability analysis itself, in part because Walmart hasn't asked for it. If you look at page 7 of their complaint, which is their prayer for relief, they just want to take down the whole thing. What they are asking for is an injunction or a declaration that the proceeding can't go forward. They haven't asked for a declaration that the removal protections are just unconstitutional and should be severed. So I don't think that's properly part of this case. But even if it were properly part of the case... It is because your European injunction where the district court declined to perform a severability analysis and slice out the part that it thought was problematic. That's right, Your Honor. So if the court thinks that severability... I would say that Walmart has gone all or nothing here. They haven't asked for severability. And therefore, it's not in play. But if this court were to move on to severability... We don't right now have a statute. We don't have a power to decide whether it's severed or not, depending on what the parties do. Again, that doesn't make sense to me, either. It's going to be framed whether we sever or say what this or that by what some party argues on the constitutionality of the statute. Really? No. Fair enough, Your Honor. ...severability to narrow the ruling. I mean, I don't know what we should do here. That doesn't make sense. Well, I... But for now, we can't do severability because they didn't argue it. Well, I think you can reach the... There's two questions about severability. Is the statute severable at all? And then sort of the fine-tuned work of exactly how to sever it. We definitely think you can reach the first question. You... and you can say the statute is severable, consistent with Free Enterprise Fund, consistent with STALEA law. There's a second question of, well, there are a couple of potential ways to fix this statute. That hasn't been briefed here. I'm not sure Walmart has asked for it, and it's part of the case. But even if it were, I think you'd probably want to send that back to the district court for... to consider in the first instance exactly how to sever it. If this court were to decide, yes, it's severable, but then we need to figure out exactly how to fix it. There is one other argument Walmart has made here, and I want to make sure I get to it, which is this. There's a difference between prospective and retrospective relief. And several courts of appeals have rejected that, and with good reason. It's inconsistent with the logic of Collins. In Collins, what the Supreme Court said is, if you have a validly appointed officer, they can exercise lawfully the powers of their office regardless of whether or not they have an unlawful removal protection. Now, that logic applies with equal force on the front end and on the back end. If ALJ, Chief ALJ King, can lawfully exercise the powers of her office pursuant to Collins, then there's no reason for this court to uphold an injunction that prevents her from lawfully exercising those powers. And that logic, and that was recognized by several circuits. The Second Circuit's decision in the Crystal Moroney case explains that. The Sixth Circuit in Calcutt and Yack have recognized that. The Fifth Circuit in the Consumer Financial Services Association case, and most directly on point, the Tenth Circuit in the Leach Code case, which they recognize is squarely inconsistent with their position and are just asking you to go into conflict with that. Unless there are other further questions, I'll take my time for rebuttal. Thank you very much. Thank you, Your Honors. May it please the Court, Jeff Johnson on behalf of Walmart. In light of this morning's discussion and concerns about the government's position, I thought it would be best to first go straight into their arguments about Collins and compensable harm. The idea that the Collins requirement applies in this case turns on a misunderstanding of what Collins says and what it means. You've got to remember, what Collins says is that an appointed officer, invalidly appointed, doesn't have power to act. But oftentimes, an invalidly shielded officer will have power to act. The question entirely, though, is whether or not that restriction on their power is severable from their power to act. For instance, imagine that this statute said, ALJ shall have the removal protections that we have just mentioned, and if those provisions are found unconstitutional, they shall not be severed. They are inseverable. They are key to this scheme. No one would think that if ALJ King kept holding hearings and pretending to adjudicate Walmart's cases, that she would have power to act in that circumstance. It would be just as unlawful as if she'd been appointed by the wrong person. But that's not because of the unconstitutional protection. It's because Congress has told you in the same statute, in your hypothetical, that it does allow anything separate. Right, but it shouldn't matter from a logical perspective if the inseverability comes because of an express non-severability provision or because, as we argue, the restrictions aren't severable. As we explain in our briefs, the entire point of giving ALJs these four cause protections and then later enhancing them through the protections on the MSPB members was to go from the old bad world where ALJs were seen as mere lackeys of the agencies that appointed them to a new world in which they had sort of unusual decisional independence. And so they weren't seen as just the lackeys of the agencies that appointed them. They were seen as independent decision makers and given powers equivalent to those of a federal district judge in some cases. And so the severability analysis goes hand in hand with the Collins remedial analysis of whether or not you have to show that you're going to be harmed. The question isn't, is Walmart going to be harmed in some particular way? The question is, does ALJ King have lawful authority to act? And ALJ King does not have lawful authority to act if the restrictions preventing the Attorney General from removing her are inseverable. All the executive powers that she exercises at that point are no longer lawful and she has to be stopped from acting. Right, so you have the inseverability to say that you are unlawful authority to act. I very much agree with that, Your Honor. And that gets me to a point about the prospective retrospective distinction. We don't think that there's a second independent freestanding sort of prospective retrospective line. What we think is all those cases were about right. What Collins says is even if it's severable, you can still get relief if you can show that during the time your adjudication took place, you know, when it happened, everyone thought that so and so was shielded by these unconstitutional provisions. So even though it's severable, we will allow you to get relief if you can prove that the President's inability or the Attorney General's inability to remove that person caused harm. None of that takes away from the fundamental point of seal of law and Collins that if the person lacks authority to act, we're done here. We don't have to show, you know, if ALJ is appointed incorrectly, no one has to show that the incorrectly appointed ALJ would have made different decisions had she been put in place by the right officer. There's nothing in this record that this person was appointed incorrectly. Correct. We're not challenging ALJ King's appointment, but what we're saying I don't want to be very clear about that. There's absolutely nothing in this record that challenges in any way the initial appointment of this ALJ. All we hear is about is possibly, well, we hear about is the procedure for removal. Is that correct? It's correct insofar as what we're not raising an appointments clause challenge. I think, again, my point though is that I'm on a record question. There's nothing in this record or allegation or anything about the appointment. No, we've never brought a claim based on the appointment of ALJ King. But again, the point is that because the removal restrictions on ALJ King are inseverable from the executive power that she exercises, it's just as unlawful for her to act without a call-in showing as it would be unlawful for her to act if she had been appointed by this court or by... Your argument, and maybe it's right, but your argument is that the minute you show an appointments clause violation, right, here because of the double layer of protection, you get automatic injunctive relief. You don't have to show anything else. That's the bottom line position, right? So if this were an appointments clause case, I think that would be very obvious. Imagine that after seal... What is it? What is it? Sorry. So if this were an appointment-specific version of the argument. Now, the President's power to remove comes from the vesting clauses and other provisions of Article 2. What I'm saying is, yes, if there's an inseverable component that sort of takes away the person's executive power, of course you get an injunction against that as long as you satisfy the other, you know, public interest. Follow up on that. So tell us, you said the four cause statutory provisions violate the Constitution, right? Correct. And exactly what provision of the Constitution do you claim they violate? So articulate that for me. They violate the restrictions found in Article 2 on the President's power to control the executive branch, including its inferior officers who exercise his power. So the four cause limitation on Attorney General... That's what I'm talking about. Yeah. And so, again, to go... It's just Article 2, right? Yes. To go back to your question, Judge Jordan, again, imagine after seal of law, or after Lucia, excuse me, the agency kept holding hearings with an ALJ who'd been improperly appointed by someone who did not have the power to appoint that person. Of course a party could get an injunction saying they want to hold me for executive proceedings before someone who has literally no power to act. But you said without the power to appoint, because we don't have that. So I'm saying, but when you bake in an unseverable removal restriction, that takes away their power to act just as much. Again, if you go back to the example of a statute that expressly says this ALJ has to have these protections against removal or else they can't act. Of course you could get an injunction in that context. You think in the severability analysis, and I'm going to play devil's advocate against you this time. You think in the severability analysis, Congress would prefer to have a system in which alleged violations of the immigration laws by employers go unchecked rather than have a system where one layer of forecast protection is removed and severed? With respect, I think that's a little bit of a jaundiced way, a devil's way of framing the question. I don't think that's the question that Congress, the question isn't will forever and always immigration laws will go unenforced. The question is until Congress acts to fix the problem. You never know when Congress is going to act. You have to ask. That's. You have to ask. You say Congress, maybe a fictional Congress, maybe a reasonable Congress, maybe this Congress would prefer to have a system in which I-9 compliance goes completely unchecked. So I think that the history. Congress should say yes to it. It's such a yes because that's not, again, that Congress can fix this problem. We know from the Administrative Procedure Act history that Congress was solving the exact problem of ALJs who were seen to be the lackeys of the agency that appointed them. Congress lived in the world where ALJs were the lackeys of the agencies that appointed them. And it said, no, we don't want that world anymore. It had a menu of options, some of which were constitutional that it could have chosen from. But all that took place before the Supreme Court's recent spate of cases. Congress was operating in a very different constitutional landscape. I think that's fair. But the question is still, okay, well, do we want to go back to the exact problem world that we used to live in where ALJs were just the tools of their agencies or do we want to give Congress time to go ahead and come up with a constitutional alternative to this? And I don't think that it means that the immigration laws will go forever unenforced. If this is as important as my colleague on the other side suggests, then Congress will act. It's worth pointing out that none of the immigration violations alleged here have anything to do with hiring an illegal alien. It's entirely about whether or not Walmart's electronic audit system properly captured the relevant I-9 data. So this isn't like, you know, keep... It's about sanitary compliance. I'm not saying it's not important, Your Honor. All I'm saying is that this is not a realm in which all of the immigration laws are going to come tumbling down. I'm not suggesting that it is. But there are going to be those other cases in which employers might be alleged to be doing something illegal and not just failing to comply. And the record entered in this case would mean that those ALJs can't rule. So to be clear, the Immigration and Nationalization Act is an extremely complicated body of law. Many times the government for, you know, crimes takes the DOJ. They go to Article III court for those kinds of immigration problems. So I grant you that there will be immigration proceedings that are halted until Congress fixes the unconstitutional system that it has put in place and that the government does not defend on the merits before this court at all anymore. So I don't want to, you know, downplay that that's what's going to happen. But again, the question under the Supreme Court's severability analysis is will the statute function in a manner that the Congress would have wanted? And just like in the Murphy case where they say, boy, it would have been weird to make this part severable, not that part severable, given what the Congress knew. This Congress, again, lived in a world where they were tools... Are we done with that? I want to switch you to the merits. Sure. I don't think we take concessions. Something's unconstitutional. We look at it. So I want to address what I see is a difference here between Collins and Rodriguez in terms of the scheme that we have here. In Collins, excuse me, here we have the ALJ and we have two layers before we get to the ALJ. We have the Attorney General who is subject to presidential removal without cause. We know that.  Had no protection, right? Correct. And then under the Attorney General, we have the Chief Administrative Hearing Officer. Same thing, right? Yes. And then the Chief Hearing Administration Officer is over the ALJ and the ALJ has the full cause removal, right? Full cause as established and determined by the Merit Systems Protection Board, who is itself... I understand. And those MSPB, they have full cause removal. I got that part. Okay, but I'm talking about inferior officers. Mm-hmm. We have the same type of inferior officer, okay? And whether this particular... This is an inferior officer, right? You agree with that part? Yes, the government's never argued otherwise. You agree with that? And so we have to also look at whether this inferior officer has policymaking and... What is it? Administrative guidance. What's the term? Limited duties and no policymaking or administrative authority, as Rodriguez is quoting. So you don't claim there's policymaking here? No, we very much do, Your Honor. Oh, okay. So let's say you claim they have both. Okay, the ALJs. But I'm trying to see if we have a holding that's even close in point to this scheme. On the merits now, if you look at Collins, Collins was the single director of the FHFA, right? Correct, yeah, principal officer. Yeah, principal officer, no doubt about it. Easy case, arguably, in terms of the constitutionality, the full cause. Okay, and then if you even look at Rodriguez, we got the Social Security SSA, administrator of the bank. Yeah, there are multiple issues in the case, but the bulk of its analysis is about the head of the SSA. Do you think he's called administrator? I mean, so we've got those two cases. Right. But the merits issue here is about somebody... Weigh down the food chain, so to speak. Okay, so neither of those cases really decide the merits here. I agree with that, Your Honor. So what your best merits case is on ALJs is what? My best merits case is that Rodriguez and the Supreme Court have made clear that there's only two exceptions. The exception for inferior officers is exactly what you said, people with limited duties and no policymaking or administrative authority. Case yet. You don't have a merits case yet on the ALJ situation, particularly with two layers. The person who appoints all these people, the president can fire. Both ALJ and the chief administrating hearing officer, right? Correct. So we're getting to kind of please how far does it go that the executive can fire without anything. Okay. All right, so we have no holding on this. We have no precedent binds us, correct? Correct. There's no decision from the Supreme Court or this court that addresses whether ALJs go beyond the scope of the exception. I'm not saying that cuts. I'm just trying to understand if I got the universe of what I need to look at. Yeah, I agree that's the universe. What I need to look at in this universe. Um, case law, not your argument. What case law should I look at? I think you need to compare the officer here with the officer in Perkins and Morrison. Is there a case you want me to look at? A circuit case? No, there's no circuit court that I'm aware of that has addressed this issue. I want you to look at Perkins and Morrison and see the law and look at what the Supreme Court said about inferior officers. I may have one point, Your Honor. If the court concludes that this is severable, I do think that we are at least entitled to a forward-looking declaration that says that that is severed. That's what the court granted in free enterprise fund, even though it's separate, you know, even though it severed the two levels. So I think that there would be that request live as well. If there are no further questions. No, thank you very much. Thank you. Thank you, Your Honors. I don't think it's jaundiced to be clear-eyed about exactly the implications of their argument here. They are saying all I-9 enforcement has to stop unless and until Congress is able to act. And it's not just I-9 enforcement. That actually wildly understates the stakes of the potential implications of their argument. Every ALJ, there are 2,000 ALJs spread across dozens of agencies that conduct all kinds of proceedings. They keep consumers safe at the Consumer Product Safety Commission, going after defective products. They help control markets against financial misdeeds at places like the Federal Deposit Insurance Corporation and the Office of the Comptroller of the Currency. I could go on and on and on. But the logic of the District Court's opinion here is all of it stops unless and until Congress amends the statute. That's what they're saying on their severability analysis. And I just think it is inconceivable that Congress would have wanted that. And we know that the Supreme Court has repeatedly indicated that's not how we go about doing things. They severed in SALA law. They severed in Free Enterprise Fund. They severed in Arthrex. And they have, in the Barr case, said, there's a strong presumption of severability. When you're thinking about the severability question, I'd urge you to... I think this is sort of implicit in your brief, if not outwardly expressed. If you have an appointments clause problem, right, initial appointment is faulty constitutionally, you would agree that an injunction could be issued. Yes, absolutely. But Collins draws a sharp distinction between appointment and removal. And on the appointment side, that's something that generally the agency can fix. The Supreme Court found an appointments clause problem in the Lucia case from 2018. And then the ALJs got appointed, just like nobody has disputed that Chief ALJ King here was properly appointed. And then business can go forward. It's possible for the agency to continue doing its work. There's no need to, like, put things in permanent stasis until Congress intervenes. In terms of whether or not this would recreate exactly the harm that Congress sought to avoid in giving ALJs removal protections, it would not. The ALJ removal protections are just one of a group of reforms that Congress implemented in the Administrative Procedure Act. Those are collected at page 19 of our reply brief. If you strike down the removal protections, ALJs still have to be impartial. They still can't play a prosecutorial role. They still can't engage in ex parte communications. Their salary is still decided by OPM, not their employing agency. So as a result, I don't think this would take us back to the bad old days where ALJs were mere tools of the agency. If the agency doesn't like the ruling, they can be fired. They can. I don't want to say... If the agency doesn't like the ruling against the agency, which is what they do all the time, is the party who's before them can be fired. They can. Absolutely. And I don't want to understate that. Removal is an important means of control. Of course, as I think Your Honor pointed out earlier here, if the Attorney General or the Chief Administrative Hearing Officer doesn't like the ALJ's ruling with regard to Walmart, they can just reverse it themselves because they have the opportunity to review it. So they don't need to immediately go to the nuclear option. But I take that point. I'm just saying that it would not recreate what existed before. It's a de novo review by the hearing officer. I mean, by the Chief Administrative Officer. That's correct, Your Honor. Yeah, so that's why I don't know why it's unconstitutional. But anyway. Well, I see my time is up. Thank you so much. We'd urge you to reverse.